RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0121p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHRISTOPHER T. FOWLER,

*Defendant-Appellant.*

Nos. 19-3070/3071

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:08-cr-00512-1—Benita Y. Pearson, District Judge.

Decided and Filed: April 21, 2020

Before: NORRIS, MOORE, and DONALD, Circuit Judges.

_____

**COUNSEL**

_____

**ON BRIEF:** Catherine Adinaro Shusky, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Michael E. Sullivan, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

_____

**OPINION**

_____

BERNICE BOUIE DONALD, Circuit Judge. In 2018, Christopher T. Fowler ("Fowler") pled guilty to possession of child pornography and violations of the conditions of his supervised release from a previous conviction for the same. Under 18 U.S.C. § 3014, the district court ordered Fowler to pay a $5,000 special assessment for possession of child pornography. The district court also varied upward and sentenced Fowler to the maximum statutory penalty for violating the conditions of his supervised release. On appeal, Fowler challenges both the $5,000

special assessment and the court's decision to vary upward to the maximum for the violation of the conditions on his supervised release. Because we find the district court committed plain error by failing to address Fowler's ability to pay the assessment, we VACATE the district court's imposition of the assessment and REMAND for a determination of indigency. However, we AFFIRM the district court's sentence of Fowler on the violation of the conditions on his supervised release.

## I. Background

The facts in this case are undisputed. In 2010, Fowler pled guilty to one count of receipt and distribution of child pornography and one count of possession of child pornography. He was sentenced to 82 months' imprisonment followed by 10 years of supervised release. After serving his sentence in prison, Fowler was released in 2015 and began serving his term of supervised release. Fowler repeatedly violated the conditions of his supervised release, first by testing positive for drugs and then by committing the same type of offense that landed him in prison in 2010. From June 14, 2016, to December 14, 2016, Fowler used a peer-to-peer file sharing program on his smartphone to gain access to child pornography, including graphic depictions of several children under the age of 10. The government charged Fowler with one count of receipt and distribution of child pornography under 18 U.S.C. § 2252(a)(2) and one count of possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B).

In addition to his repeated drug use, Fowler committed several troubling acts while his case was pending. He made over fifty calls to his girlfriend in an attempt to get her to recant testimony that she had given at a detention hearing held in November 2017. During a phone call with his mother, Fowler also threatened to hurt his probation officer.

On May 8, 2018, Fowler pled guilty to possession of child pornography on the condition that the government would drop the count for receipt and distribution of child pornography. He signed a plea agreement, which included a waiver of appellate and post-conviction rights:

> Defendant acknowledges having been advised by counsel of Defendant's rights, in limited circumstances, to appeal the conviction or sentence in this case, including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally through a post-conviction proceeding,

including a proceeding under 28 U.S.C. § 2255. Defendant expressly and voluntarily waives those rights, except as specifically reserved below. Defendant reserves the right to appeal: (a) any punishment in excess of the statutory maximum; [] or (c) [sic] the Court's determination of Defendant's Criminal History Category. Nothing in this paragraph shall act as a bar to Defendant perfecting any legal remedies Defendant may otherwise have on appeal or collateral attack with respect to claims of ineffective assistance of counsel or prosecutorial misconduct.

At the change of plea hearing, Fowler acknowledged that he understood this section of the plea agreement. During this same hearing, the prosecutor noted Fowler would be subject to a $5,000 special assessment under the Justice for Victims of Trafficking Act, but the prosecutor also stated that this special assessment was not mentioned in the written plea agreement. The prosecutor, however, noted that the special assessment could be waived if the court were to find that Fowler is indigent. The district court responded that it expected to hear arguments on this issue at sentencing, and Fowler's counsel stated that he fully expected that Fowler would be deemed indigent.

The presentence investigation report (PSR) included some information about this $5,000 assessment and Fowler's finances. Specifically, the PSR noted that the court shall assess this $5,000 assessment on any non-indigent person convicted of possession of child pornography, but otherwise neglected to address whether Fowler is indigent for purposes of this assessment. The PSR did, however, note that Fowler was appointed counsel after Fowler completed a financial affidavit indicating that he is indigent. Further, the PSR noted that, although Fowler had an associate degree in business from Glenville State College, and work history, including his most recent employment as a welder where he earned $24.80 per hour, Fowler was unemployed and owed money on almost, if not, all of his financial accounts.

At sentencing, the district court addressed both the new charges and the violation of supervised release that stemmed from Fowler's 2010 conviction. During the sentencing hearing, defense counsel objected to the inclusion of an uncorroborated statement in a supervised release violation report from October 3, 2018, which alleged that Fowler had admitted to molesting a young girl and becoming sexually aroused while in contact with a two-year-old girl. The district court struck the language and noted that the statement had not weighed heavily on the court's

mind in determining the sentence. Later, the district court stated that the court did not care if Fowler had ever actually touched a child, noting that, by simply possessing child pornography, Fowler had victimized and abused children. Right before announcing Fowler's sentence, the district court again noted that it had stricken that language from the record, but continued, "It's unsubstantiated, that which suggests you molested a child. But truthfully, I'll never know. I'll never know. And you're not required to tell me."

The district court then announced that it would sentence Fowler to serve a 120-month sentence for possessing child pornography, to serve a consecutive 36-month sentence for violating the terms of his supervised release, and to pay a $5,000 special assessment under the Justice for Victims of Trafficking Act. The district court specifically advised Fowler that he would have the opportunity to object to the special assessment, but Fowler did not and instead only objected to the 36-month sentence for violating the terms of his supervised release. During the sentencing hearing, no one mentioned Fowler's finances although his attorney did discuss his education and work history, which were also detailed in the PSR as discussed above.

Fowler now raises two challenges on appeal: (1) the district court committed plain error by imposing the $5,000 special assessment under the Justice for Victims of Trafficking Act, and (2) the district court sentenced Fowler to a substantively unreasonable sentence when it considered the uncorroborated allegation that Fowler admitted to molesting a young girl. To the first challenge, the government argues that Fowler waived any challenge to the special assessment when he signed the plea agreement, which included the appellate waiver discussed above. Furthermore, the government argues that, even if not waived, the court did not commit plain error. To the second challenge, the government argues that the district court did not consider an impermissible factor. We address each issue in turn.

## II.  $5,000 Special Assessment

First, Fowler challenges the district court's assessment of $5,000 against him as a part of his sentence for possession of child pornography. Under 18 U.S.C. § 3014, "the court shall assess an amount of $5,000 on any non-indigent person . . . convicted of" offenses, including possession of child pornography. 18 U.S.C. § 3014(a)(3). Fowler argues that the district court

committed plain error because it did not make any findings related to his indigency or non-indigency and because the record does not support a finding of non-indigency. Meanwhile, the government contends that Fowler waived any challenge to this $5,000 assessment under the plea agreement and further argues that the district court did not commit plain error because the record supports a finding of non-indigency. For the following reasons, we find that, Fowler did not waive his right to appeal the special assessment, and the district court committed plain error in failing to address indigency or Fowler's ability to pay before imposing the assessment.

### A. Standard of Review

"This Court reviews the question of whether a defendant waived his right to appeal his sentence in a valid plea agreement *de novo*." *United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003). If there was no waiver, then we review Fowler's claims for plain error because Fowler failed to object to the imposition of the $5,000 special assessment. *See United States v. Wandahsega*, 924 F.3d 868, 889 (6th Cir. 2019). To succeed under plain error review, a party must show "(1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (internal quotations omitted).

### B. Waiver

First, we decide the waiver issue. Because we find that the special assessment was not contemplated by the parties in agreeing to a plea and the waiver of appellate rights, we find that Fowler's challenge to the special assessment is not waived. "When a defendant waives his right to appeal his sentence in a valid plea agreement, this Court is bound by that agreement and will not review the sentence except in limited circumstances." *Smith*, 344 F.3d at 483 (quotations and alteration omitted). We have found that "an appeal waiver is enforceable if the defendant's waiver of his appellate rights was knowing and voluntary." *United States v. Toth*, 668 F.3d 374, 378 (6th Cir. 2012).

Before examining whether the waiver was made knowingly and voluntarily, however, we first "look to see if the claim raised on appeal falls within the scope of the appellate waiver." *Id.*

(citation omitted). In deciding the scope of the appellate waiver, we use ordinary contract law principles and construe any ambiguities against the government. *United States v. Bowman*, 634 F.3d 357, 360 (6th Cir. 2011) ("[B]ecause plea agreements' constitutional and supervisory implications raise concerns over and above those present in the traditional contract context, in interpreting such agreements[,] we hold the government to a greater degree of responsibility than the defendant for imprecisions or ambiguities in the plea agreements." (internal quotations and alteration omitted)).

Here, the main issue is whether the special assessment falls within the scope of the appellate waiver. While the language of the waiver in this case is certainly broad enough to include the special assessment—"Defendant expressly and voluntarily waives" his right "to appeal the . . . sentence in this case"—our inquiry does not end there. In *United States v. Smith*, the court examined a broadly-worded appellate waiver but declined to apply it. 344 F.3d at 483. In *Smith*, the defendant agreed "to pay restitution for all losses resulting from his relevant offense conduct" while also agreeing to waive "any right he may have to appeal any sentence which is within the parameters of this agreement." *Id.* (quoting the plea agreement). Despite those provisions, the Court determined that "[t]he plea agreement is ambiguous as to the amount and manner of determining restitution" and allowed the defendant to challenge the amount of restitution on appeal. *Id.*

Additionally, in *United States v. Droganes*, the Court examined an appellate waiver similar to the one in this case and asked whether it covered a forfeiture order. 728 F.3d 580, 586 (6th Cir. 2013). The defendant waived his "right to appeal . . . any sentence that is within the Guideline range." *Id.* (quoting the plea agreement). The Court noted that a forfeiture order is properly viewed as part of the defendant's sentence but ultimately concluded that the appellate-waiver provision did not apply to the defendant's challenge to the forfeiture order. *Id.* at 586-87. The Court found that "the express terms of the [agreement] are silent regarding the issue raised," and the Court also noted that, according to the parties, the forfeiture issue was still an open question after the plea agreement. *Id.* at 586.

While the language of the agreement in this case is broad, the parties agree that the special assessment was not mentioned in the plea agreement. In fact, during the plea colloquy,

the government admitted that there was no mention of the $5,000 special assessment in the plea agreement. A look at the agreement confirms as much and makes it clear that the parties did not consider the $5,000 special assessment in agreeing to a plea. In paragraph two of the agreement, the parties listed the statutory penalties for pleading guilty to possession of child pornography; while a $100 special assessment is mentioned, there is no mention of the $5,000 special assessment under § 3014. Additionally, at paragraph four, the parties specifically agreed that the defendant would have to pay that $100 special assessment, but again there is no mention of the $5,000 assessment. Thus, as in *Droganes*, the agreement here is "silent regarding the issue raised," *Droganes*, 728 F.3d at 586, and the specificity as to the other special assessment further highlights the parties' failure to contemplate the $5,000 special assessment in constructing their plea agreement.

This analysis is also consistent with a Tenth Circuit decision addressing the same issue. *United States v. Janatsch*, 722 F. App'x 806 (10th Cir. 2018). In *Janatsch*, the defendant "waived the 'right to appeal his sentence as imposed by the Court.'" *Id.* at 809 (quoting the plea agreement). Yet, on appeal, the court found that "[s]ince the plea agreement does not mention the $5,000 special assessment, [the defendant] did not explicitly waive his right to appeal the assessment." *Id.* at 810.

The government points to two cases to argue that the special assessment falls within the scope of the agreement, but both are distinguishable from the facts in this case. In *United States v. Calderon*, the Court upheld a waiver of appellate rights where the defendants waived "any right [they] may have to appeal [their] conviction or sentence" as long as the sentence is not greater than the agreed-upon maximum. 388 F.3d 197, 199-200 (6th Cir. 2004) (quoting the plea agreements). As part of the plea agreement, the defendants had each made modifications to the agreement, one oral and one hand-written, allowing them to ask for a downward departure at sentencing. *Id.* The Court found that, with these modifications, the defendants were bound by their agreements not to challenge the sentence, which was below the agreed-upon maximum. *Id.* at 200. Whereas the defendants in *Calderon* had contemplated the downward departure issue in agreeing to waive their appellate rights, *id.*, here, the plea agreement, which had no handwritten or oral modifications, makes no mention of the $5,000 assessment.

Finally, the government relies on an out-of-circuit case: *United States v. Bolin*, 908 F.3d 287 (7th Cir. 2018). In *Bolin*, the court was dealing with the same special assessment that we deal with in this case. *Id.* at 288-89. The court found that the defendant waived his right to appeal the special assessment when he agreed to a blanket waiver of appeal, which included "all provisions of the guilty plea and sentence imposed, including the length and conditions [of] supervised release and *the amount of any fine*." *Id.* at 288 (quoting the plea agreement) (emphasis added) (alteration in original). Not only did the agreement include a reference to fines, but the PSR also included a recommendation that the $5,000 special assessment be assessed against the defendant. *Id.* In our case, there is no reference to any fine in the waiver provision, and, while the PSR included a reference to the $5,000 special assessment, the probation officer did not recommend that it be assessed in this case.

As such, we conclude that the parties did not contemplate the $5,000 special assessment as a part of the waiver provision in the plea agreement. And, because "we hold the government to a greater degree of responsibility than the defendant . . . for imprecisions or ambiguities in the plea agreements," *Bowman*, 634 F.3d at 360 (internal quotations omitted), we hold that Fowler is not barred from challenging the imposition of the $5,000 special assessment.

## C. Plain Error Review

We further hold that the district court committed plain error in assessing the $5,000 under § 3014 by failing to make any findings on indigency or Fowler's ability to pay. Although this case presents a novel issue—does a district court commit plain error in imposing a $5,000 special assessment against a defendant convicted of possession of child pornography under § 3014 when the court fails to address indigency or the defendant's ability to pay—we do not decide that issue on a blank slate.

In *United States v. Kent*, this Court held that, when a defendant fails to object to the imposition of the special assessment under § 3014, we review for plain error. 765 F. App'x 126, 126 (Mem) (6th Cir. 2019). The Court, in *Kent*, did not address whether the court committed error by failing to assess the defendant's financial condition; instead, the Court noted that "error is plain only when binding case law makes it clear." *Id.* (citing *United States v. Al-Maliki*,

787 F.3d 784, 794 (6th Cir. 2015).  Because this issue was one of first impression at that time, the Court affirmed the imposition of the special assessment and concluded that "no binding case law exists to render the error plain." *Id.*  Since the Court's decision in *Kent*, which occurred in April of 2019, the law has changed.

In *United States v. Shepherd*, this Court again examined the special assessment under § 3014.  922 F.3d 753 (6th Cir. 2019).  The Court noted that a "district court has no choice but to impose the $5,000 assessment if it determines that the defendant is non-indigent.  And the opposite is also true:  the district court cannot impose the assessment on an indigent defendant." *Id.* at 757.  The Court determined that there are two basic questions when assessing the defendant's indigency under § 3014:  "(1) Is the defendant impoverished *now*; and (2) if so, does the defendant have the means to provide for himself so that he will *not always* be impoverished[.]"  *Id.* at 758 (emphasis in original).  In *Shepherd*, the Court also found that having appointed counsel "is probative but not dispositive of whether [a defendant] is indigent under § 3014." *Id.* at 759.  In *Shepherd*, we held that a district court need not make "an *explicit* finding of . . . non-indigency."  *Id.* at 760 (emphasis added).  Instead, "the court has done its duty if the record makes clear that the sentencing judge listened to each argument, considered the supporting evidence, was fully aware of the defendant's circumstances and took them into account in sentencing him."  *Id.* (quotations omitted).  The district court did just that in *Shepherd* when it imposed the assessment "after hearing argument from both sides about Shepherd's finances, education, and employment history."  *Id.*  It also "justified [its] decision" based on the defendant's future ability to pay.  *Id.*  We accordingly concluded that "the district court's finding was specific enough."  *Id.*  *Shepherd* was decided and filed on May 1, 2019.  *Id.*

A few weeks later, on May 21, 2019, this Court decided *United States v. Wandahsega*, 924 F.3d 868 (6th Cir. 2019).  In *Wandahsega*, the Court examined whether a district court committed plain error when it failed to make "a detailed factual finding of [the defendant's] non[-]indigence" and then imposed the $5,000 assessment under § 3014.  *Id.* at 888.  The Court compared the assessment to a fine under the sentencing guidelines, noting that, under the guidelines, a defendant bears the burden of proving indigency.  *Id.* at 889-90 (citing U.S. Sentencing Guidelines Manual § 5E1.2(a)).  After examining the defendant's current finances

and future earning potential, the Court concluded that the district court did not plainly err in concluding that he failed to meet his burden to prove indigency. *Id.* The Court held that "detailed findings are not necessary where it can be inferred that the district court *considered* the defendant's ability to pay." *Id.* at 888 (quotation omitted) (emphasis added).

Because both *Shepherd* and *Wandahsega* were announced prior to our decision in this case, they constitute binding case law that factors into our plain error analysis, and, thus, we cannot address our issue in the way that the Court did in *Kent*. *See Henderson v. United States*, 568 U.S. 266, 269 (2013) ("[A]s long as the error was plain as of . . . the time of appellate review[,] the error is 'plain' within the meaning of the Rule." (citing Fed. R. Crim. P. 52(b))); *United States v. Woodruff*, 735 F.3d 445, 450 (6th Cir. 2013) ("Plain error can occur at the time of a district court's decision and at the time of appellate review.") Although helpful, neither *Shepherd* nor *Wandahsega* squarely answer the question that we face: does a district court commit plain error in assessing $5,000 against a defendant convicted of possession of child pornography under § 3014 when the court fails completely to address indigency and the defendant's ability to pay?

Although our precedent on fines is useful to some extent, *see Wandahsega*, 924 F.3d at 889-90, the language in the sentencing guidelines on fines and the language on the special assessment in § 3014 are different and thus dictate a different result. Under the sentencing guidelines, "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a). In *United States v. Tosca*, the Court, in analyzing U.S.S.G. § 5E1.2(a), noted that a "defendant has the burden of establishing that he or she is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay all or part of the fine." 18 F.3d 1352, 1354 (6th Cir. 1994).

Here, however, we are analyzing 18 U.S.C. § 3014(a): "[T]he court shall assess an amount of $5,000 on any non-indigent person." The text of § 3014(a) does not place a similar burden on the defendant to raise the issue of indigency. As we pointed out in *Shepherd*, "the statute here uses mandatory language, leaving no room for discretion"—meaning that "the district court cannot impose the assessment on an indigent defendant." 922 F.3d at 757. And, in

contrast to § 5E1.2(a), the text does not condition imposition of the fine on an argument from the defendant that he is unable to pay.  As such, we hold that, before imposing an assessment under § 3014(a), sentencing courts must ensure that the defendant is not indigent.

We further hold that the district court plainly erred in this case by failing to address Fowler's finances and ability to pay before imposing the assessment.  Here, the district court did not entertain arguments, consider evidence, or say anything to indicate that it took the defendant's circumstances into account before deciding to impose the assessment; thus the court erred.  Having established that it was error, we next must determine if the error "was obvious or clear."  *Vonner*, 516 F.3d at 386.  Because our decision is merely an extension of the Court's holding in *Shepherd*, 922 F.3d at 757, we find that the error here was clear.  Finally, because the court imposed a $5,000 assessment on Fowler, we find that the error affects his substantial rights and affects the fairness of his proceedings.  *See Vonner*, 516 F.3d at 386.  Therefore, we hold that the district court plainly erred in failing to consider whether Fowler is indigent before imposing the $5,000 assessment.

### III.  Substantive and Procedural Reasonableness

Fowler also challenges the substantive reasonableness[1] of his sentence, arguing that the district court considered an improper factor in sentencing Fowler to a 36-month sentence for violating the terms of his supervised release.[2]  Specifically, Fowler argues that the district court considered an unsubstantiated allegation that Fowler had molested a child when it decided to vary upwards and sentence him to 36 months.  Because we find that the district court did not

---

[1]At the outset, we note that members of our Court disagree over whether challenging the district court's consideration of an improper factor is a substantive or procedural challenge.  *Compare United States v. Cabrera*, 811 F.3d 801, 808-09 (6th Cir. 2016) ("[C]onsideration of an impermissible factor is more properly considered a procedural, not substantive, error."), *and United States v. Malone*, 503 F.3d 481, 484 (6th Cir. 2007) ("[C]onsideration of an impermissible factor—it seems to us—more appropriately involves the procedural reasonableness prong . . . ."), *with United States v. Hunt*, 521 F.3d 636, 649 (6th Cir. 2008) ("A district court imposes a substantively unreasonable sentence . . . when it bases the sentence on impermissible factors . . . ."), *and United States v. Ferguson*, 456 F.3d 660, 664 (6th Cir. 2006) ("[A] sentence may [be] substantively unreasonable where the district court . . . bases the sentence on impermissible factors . . . ." (internal alterations and quotations omitted)).  This issue is ripe for en banc review but not in this case, as we are able to conclude on the merits that the district court did not consider an impermissible factor in sentencing.

[2]For clarity, the plea agreement, including the appellate waiver discussed above, only applies to the sentence for the possession of child pornography charge and not the sentence for the supervised release violation.

consider this unsubstantiated allegation, we affirm the district court's 36-month sentence for Fowler's violation of his supervised release conditions.

### A. Standard of Review

Both procedural and substantive reasonableness claims are reviewed for an abuse of discretion. *United States v. Jeter*, 721 F.3d 746, 755-57 (6th Cir. 2013). Whether substantive or procedural, a district court abuses its discretion when it considers an impermissible factor in sentencing. *Id.* at 757; *Cabrera*, 811 F.3d at 808-09. "Even if a district court relies on a large number of relevant factors, we must vacate and remand for resentencing if the court considers an impermissible factor in calculating a defendant's sentence." *United States v. Van*, 541 F. App'x 592, 596 (6th Cir. 2013) (citing *United States v. Recla*, 560 F.3d 539, 545 (6th Cir. 2009); *Hunt*, 521 F.3d at 649).

### B. Reasonableness

We find that the district court did not consider an impermissible factor when it sentenced Fowler. "Our jurisprudence postulates the ability of judges to dismiss from their minds, in reaching decision, offers of evidence excluded by rulings after hearing arguments on admissibility of that evidence." *United States v. Brooks*, 355 F.2d 540, 542 (7th Cir. 1965). In *United States v. Gonzales*, the Ninth Circuit addressed a case with similar facts to those in our case. 765 F.2d 1393 (9th Cir. 1985). In *Gonzales*, the defendant argued that the district court relied on references to two arrests for sex offenses that were included in the PSR, but the Ninth Circuit found that, after Gonzales objected, the district court explicitly stated that it did not consider those offenses in its sentencing decision. *Id.* at 1396. Gonzales argued that the court should not take the district court at face value, but the Ninth Circuit responded, "We must take such statements at face value because if we do not do so, we will have abandoned our reliance on the good faith of our district court judges." *Id.* at 1397.

Here, Fowler objected to the inclusion of an uncorroborated statement in a supervised release violation report from October 3, 2018, which alleged that Fowler had admitted to molesting a young girl and becoming sexually aroused while in contact with a two-year-old girl. When he objected, defense counsel expressed concern as to whether "[the statement] was going

to be heavy on the court's mind." The district court sustained the objection and replied to defense counsel that it had not weighed heavily on the court's mind. The district court also asked defense counsel if he wanted the statement stricken since defense counsel had neglected to do so, and, when he then moved to strike, the district court struck the statement from the violation report. Later, the district court stated, in discussing why the guidelines were not appropriate:

> [T]hey stop being appropriate in this case because this is your second time abusing children. *And I don't care if you ever touched them*. I only care that you fantasized about them, you victimized them. You've done things that you and I will never fully understand as a result of your access to child pornography. And you did it while on supervision after this hard 82 months.

The district court continued, "You flaunted the opportunities for treatment. You continued to abuse drugs. And, most importantly, you continued to abuse children through your pornographic materials." Finally, in what Fowler contends is evidence that the district court considered this allegation, the district court stated:

> I don't see any reason why I should put society at risk. What I do now I think is necessary to promote respect for the law and protect society, primarily the children who cannot speak for themselves. I've stricken that language. It's unsubstantiated, that which suggests you molested a child. But truthfully, I'll never know. I'll never know. And you're not required to tell me.

Immediately before this statement, the district court explained that it was exercising its discretion to vary upwards to the statutory maximum for the supervised release violation: 36 months to run concurrent to the sentence for the possession of child pornography conviction.

While the timing of this statement may appear troubling when viewed out of context, we read it differently than Fowler. The district court actually asked if defense counsel wanted the statement struck and then struck it. Further, the district court made it clear that it did not weigh heavily on its mind and that it did not care if Fowler had ever touched a child because he had already contributed to the victimization of children by consuming and possessing child pornography. Finally, the district court re-iterated that it had struck the language and did not know if the statement was even true. We will not "abandon[] our reliance on the good faith of our district court judges," and we take the district court's statements here at face value.

*See Gonzales*, 765 F.2d at 1397. Because we find that the district court did not consider an impermissible factor and Fowler makes no other challenge to the substantive or procedural reasonableness of his sentence, the district court did not abuse its discretion in sentencing Fowler to a 36-month sentence for violating the terms of his supervised release.

**IV.**

For the foregoing reasons, we **VACATE** the district court's imposition of the $5,000 assessment and **REMAND** for a determination of indigency. We **AFFIRM** the sentence for Fowler's supervised release violation.